

# THE ATTORNEY GENERAL

# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

February 20, 1961

Mr. Wm. J. Burke
Executive Director
State Board of Control
Austin, Texas

Opinion No. WW-996

Re: Whether Acts Fifty-sixth
Legislature, Third Called
Session, 1959, Chapter 23,
page 442 prohibits the chang-
ing in the air duct connec-
tions of the air condition-
ing system in the State
Office Building when such
changes are necessary to in-
sure proper functioning of
such system.

Dear Mr. Burke:

You have requested an opinion on the following ques-
tion:

"Does Section 40 of Article V, 'General
Provisions' H.B. 4, enacted by the Third
Called Session of the Fifty-sixth Legisla-
ture, in 1959, by the following language
'Building Alterations Prohibited. None of
the funds appropriated in this Act may be
expended for removing walls, partitions or
any other permanent part of the New State
Office Building or the Supreme Court Build-
ing' prohibit a change in air duct connec-
tions supplying fresh air to the air con-
ditioning system of the New State Office
Building when such change is necessary to
insure proper functioning and continuous
satisfactory performance and adequate air
conditioning effect from certain individual
air conditioning units serving the first and
second floors of the said State Office Build-
ing?

"Does Section 40 quoted above prohibit
the installation of the necessary and proper
air duct to supply an adequate and dependably
constant amount of fresh air to the individual
air conditioning units serving the west end of
floors one and two of the State Office Building

to be connected with a new outside air intake opening constructed through the basement wall of the State Office Building near the southwest corner of said building?

"If your answer to the above question is in the negative, is the Board of Control prohibited from paying the cost of such new duct installation and necessary correction work from funds appropriated to the Board of Control from Budget Item 69 of said H.B. 4 entitled, 'Air Conditioning Maintenance, including maintenance contracts, professional fees, materials and supplies, special tools and plant equipment'?"

The facts on which your question is based are stated in your request as follows:

"Changes in the air supply ducts and connections are necessary because the large fans supplying the fresh air for all floors above the second floor develop a suction on the common air intake duct (from which the units serving the first and second floors also are supposed to obtain their fresh air supply) sufficient to prevent smaller individual units serving the said first and second floors and especially those in the west one-half of the building from receiving an adequate amount of fresh air to permit proper functioning, adequate performance and satisfactory air conditioning; and, furthermore, at times completely overpower the intake capacity of the smaller units with the result that air flows are reversed to the extent that the return air grilles actually discharge hot, contaminated air under pressure instead of sucking it in for reconditioning through filters and the cooling units.

"The effect of the above described occurrence on offices, conference and meeting rooms is such that inside temperatures cannot be controlled by the thermostats and the air conditioning units.

"The proposed, and most feasible, solution of the problem is the separation of air intake

connections and/or air sources serving the large fans and the small air conditioning units so that the respective small fans and units may have separate and independent fresh air intake sources to insure that one cannot interfere with the satisfactory operation of the other.

"In order to provide the separate air intake to supply fresh air to the units serving the first and second floors (west end) of the State Office Building, it becomes necessary to disconnect the air intake, serving the small units, from the main large air intake, serving the main fans that supply air to floors three to ten, inclusive, install a new fresh air intake for the small units (serving floors one and two) through the basement wall at the southwest corner of the State Office Building below ground level protected by an area-way and appropriate cover structure. Such installation of the necessary new duct would require an opening to be cut through the basement wall which would in effect remove a small portion of a 'permanent part' of the New State Office Building basement wall.

"Had the effect of the earlier described common source main air duct on the smaller units (serving floors one and two) been anticipated and/or possible of calculation at the time the duct system for the air conditioning was designed, there is no doubt that separate ducts would have been installed when the building was constructed. The building has been completed, occupied, and the air conditioning system has been in operation more than one year, and it is now apparent that the conditions described above could become worse resulting in more unsatisfactory operation and improper and inadequate air conditioning than we now experience."

Section 7 of Article 678m, Vernon's Civil Statutes, provides:

"The Commission shall obtain title for the State and retain control of the real property

acquired for sites and of the buildings
located thereon until final construction
is completed and the buildings are occu-
pied by the State agencies to be housed
therein, at which time the management and
control of said buildings shall be trans-
ferred to the Board of Control. Except as
otherwise provided in this Act, the initial
occupants shall be those State agencies
agreed upon by the Commission and the Board
of Control."

In view of the provisions of Section 7 of Article 678m,
it is the duty of the State Board of Control to keep the
State Office Building in proper maintenance and repair. There-
fore, it is the responsibility of the Board of Control to ex-
pend available funds to maintain the proper functioning of
equipment initially installed by the State Building Commis-
sion in the construction of the State Office Building.

Section 40 of Article V of House Bill 4, Acts of the
Fifty-sixth Legislature, Third Called Session, 1959, Chap-
ter 23, page 442 (General Appropriation Bill) provides at
page 732:

"None of the funds appropriated in this
Act may be expended for removing walls, parti-
tions or any other permanent part of the new
State Office Building or the Supreme Court
Building."

It is our opinion that the foregoing does not prevent
the Board of Control from expending appropriated funds to
provide for the proper functioning of initial equipment in
the State Office Building. This is particularly true under
the facts outlined in our request, since the Legislature
in House Bill 4 in Item 69 (page 517) of the appropriation
to the Board of Control made specific appropriation for
air conditioning maintenance.

You are, therefore, advised that you are authorized to
expend monies appropriated in Item 69 for the purposes out-
lined in your request.

## S U M M A R Y

The State Board of Control is authorized
to spend monies appropriated for air

conditioning maintenance for making changes
in the air supply ducts and connections neces-
sary to the proper functioning of the air
conditioning equipment installed in the State
Office Building.

Yours very truly,

WILL WILSON
Attorney General of Texas

By *John Reeves*
  John Reeves
  Assistant

JR:ms

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

William T. Blackburn
Leon F. Pesek
John C. Steinberger

REVIEWED FOR THE ATTORNEY GENERAL
BY: Morgan Nesbitt